GEORGE LYMAN *v.* NORWICH UNIVERSITY.

*Ratification of act of agent. Statute of limitations.*

The president of the defendant's borrowed fifty dollars of the plaintiff for the defendants, to be expended on their buildings, with the understanding that it should be repaid to the plaintiff. The money was paid into the defendant's treasury and used for the purpose intended. *Held* that this receipt and expenditure of the money was a ratification, by the defendants, of the act of their president, and bound them to a re-payment of the money, even though the president exceeded his authority in so borrowing it.

Neither the individual admissions of the members of a corporation, established for public purposes and not for the promotion of the private interests of the corporators, nor the personal admissions of its president, or of the individual members of its executive committee, respecting a debt due from the corporation will prevent the operation of the statute of limitations upon it.

BOOK ACCOUNT. The disputed item in the plaintiff's account was for "cash to repair buildings as per H. S. Wheaton's (president,) accountable receipt, April 3d, 1848,—$ 50," in reference to which the auditor reported as follows.

"In the year 1848, Henry S. Wheaton was president of the Norwich University. After his election an effort was made to raise money by subscription to repair the college buildings. That effort did not succeed, and in a conversation between the president, Mr. Brewster, a member of the corporation, and the plaintiff, who, also, was a member of the corporation, the plaintiff proposed to be one of six, who would advance the sum required,—three hundred dollars ; and for that purpose would loan fifty dollars, with the understanding that it should be re-paid to him. The plaintiff was afterwards informed by the president and Mr. Brewster, that his, (the plaintiff's) proposition had been agreed to, and the plaintiff thereupon delivered to the president fifty dollars, and the president executed to the plaintiff his receipt, which was in the following words.

*Norwich University*, April 3d, 1848.

"Received of George Lyman fifty dollars to be expended in repairs on the university buildings ; and for said expenditure I will account to said Lyman.

H. S. WHEATON, *Prest. N. U.*"

"It did not appear that the president, by any vote of the corporation, was authorized to execute notes or accountable receipts to bind the corporation of the university ; and the defendant contended that the above receipt was evidence of a personal transaction between the plaintiff and Mr. Wheaton. A committee had been appointed to make repairs of the college buildings, of which committee the plaintiff was a member, and he considered that for that object he had a right to provide money in this way. It appeared also that, at and about the time when this money was advanced by the plaintiff, the financiering of the university was done by the pres-

37

ident, Dr. Davis, and Col. Stimson, all of whom were members of the corporation, although the executive committee, appointed in 1836, and still in office in 1848, consisted of the vice president, the secretary, the treasurer, Dr. Davis and Judge Loveland, and their duty defined by the vote constituting the committee, was 'to take charge of the university buildings, and transact the business of the board, during the recess, and report to the board when called upon by the trustees.'

" It also appeared that by a vote of the corporation, passed March 9, 1835, the president was appointed general agent for the board, to obtain funds in aid of the institution, and that he was authorized to solicit funds in different parts of the country, and that that vote remains unrescinded.

" The auditor finds the fact that the fifty dollars so delivered by the plaintiff to Mr. Wheaton, the president, was paid into the college treasury and appropriated to the use of the university, and went to pay for repairs on their buildings, under the understanding of the plaintiff, that it should be repaid to him.

" The auditor allows the charge, and finds the amount thereof, interest being computed to May 10, 1855, to be seventy-one dollars and thirty-two cents; unless the court, on the facts submitted, consider that the defendant ought not to be charged with the item, and unless the charge is barred by the statute of limitations, which the defendant pleaded verbally before the auditor. The claim has repeatedly, within six years, been acknowledged to be due by Dr. Davis, Col. Nutt, and Mr. Brewster, members of the corporation, and by Mr. Wheaton, when president, and has never been paid to the plaintiff."

With the allowance of this item, the auditor reported the balance in the plaintiff's favor to be $93.73. The plaintiff's writ was dated November 9th, and served November 10th, 1854.

The county court, upon the report, rendered judgment for the plaintiff for the whole amount reported. Exceptions by the defendants.

————— ———— for the plaintiff.

*E. Hutchinson* for the defendants.

The opinion of the court was delivered by

BENNETT, J.  In relation to the first item in the plaintiff's account, the auditor submitted two questions; first did the item ever constitute a legal charge against this defendant; and if so, secondly, was it barred by the statute of limitations when the suit was brought?

The case finds, that the defendant proposed to be one of six to advance the sum of three hundred dollars to repair the university buildings; and for that purpose he would loan fifty dollars, with the understanding that it should be repaid to him; and upon being informed afterwards that his proposition had been agreed to, the plaintiff delivered to the president fifty dollars, and took his receipt for the same.  The receipt bears date the third of April, 1848; and it specifies that the money is to be expended in repairs on the university buildings; and it adds, "and for said expenditure I will account to said Lyman."  It is signed " H. S. Wheaton, President of N. U."

Mr. Wheaton paid the fifty dollars into the college treasury, and the money was appropriated to the use of the university, in paying for repairs on the buildings, with the understanding of the plaintiff, it should be repaid to him.  After such a state of facts, it is quite too late for the defendants to assume the ground that the president had no authority to bind the university to refund this money.  It was a full ratification of his acts on the part of the corporation, even though it should be conceeded that in taking up the loan, the president in the first instance transcended his authority.  But this is not, by any means, a conceded point.

In regard to the statute of limitations, it is clear that it had run on this item before the suit was commenced, unless removed by the admissions of the individual members of the college corporation.  The loan was to the corporation to aid in the repair of their buildings, and not to president Wheaton, and he did not agree to see the money refunded personally.

The most that can be claimed is that Mr. Wheaton, as president of the university, undertook to see that the money should be expended in repairing the buildings; and the case shows that it was applied for such purpose.  It has been said in argument, that six years had not run after the right of action had accrued before suit

was commenced. It seems the writ issued the 9th of November, 1854.

No time is fixed specifically when the money was to be repaid; but at all events we think it was a fair implication, that the money was to be repaid within a reasonable time; and that no special demand was necessary. The money was advanced the 3d of April, 1848; and most certainly it was reasonable that it should have been refunded before the 9th of November of the same year. The case, I think, does not show the precise time when the repairs were made on the college buildings, but it is reasonable to suppose they were made in the early part of the season of 1848; and at all events, we think the right of action accrued to the plaintiff before the 9th of November, 1848. The question then arises, what shall be the effect of the admissions of the individual members of the corporation? The fact that it is found that this money had never been repaid cannot remove the statute bar. A party may admit the debt unpaid, and still claim, at the same time, the benefit of the statute bar. To remove the statute bar there must at least be an *implied promise* to pay the debt. It has sometimes been held that the admissions of a member of a corporation may be given in evidence against the corporation, where there is a joint interest, as in the case of rateable inhabitants of a parish or town; but where it is a mere community of interest, the law, at the present day, is well settled that such admissions cannot effect the rights of a corporation. See 1 Greenleaf's Ev. sections 175, 176; Angel & Ames on Corp. 302, 592; *Hartford Bank* v. *Hart*, 3 Day 494; *Fairfield County Turnpike Company* v. *Thorp*, 13 Conn. 494; *Osgood* v. *Manhattan Bank*, 3 Cowen 623; *Bank of Oldtown* v. *Houghton*, 21 Maine 507; *Polleys* v. *Ocean Insurance Company*, 14 Maine 141. In the case before us, there can hardly be said to be even a community of interest, and much less a joint interest. There is a wide difference between this corporation and one established for private hazard and profit. The promotion of education is the cardinal object of this corporation; and it was not established to promote the private interests of the corporators. The admissions of President Wheaton stand upon the same ground as those of any other member of the corporation. His being president of the faculty, gives him no additional powers, or control over the funds of

the corporation. Though it is found that the president and Doct. Davis, at, and about the time this money was advanced, were members of the financial committee, yet it is not shown what the powers of that committee were ; and it does not appear that they were members of that committee when the admissions were made, unless we are to presume they continued in such office. It does appear that Doctor Davis was elected one of the executive committee in 1836, and was still in office in 1848, yet it is not found that he was a member of that committee at the time the admissions were made by him.

That committee consisted of five individuals, and their business was " to take charge of the university buildings, and to transact the business of the board during the recess." If that committee had full powers over the financial affairs of the university when the board of trustees was not in session ; yet it could not be bound by the individual action of one of the committee. The trust was a *joint one*, and must, at least, be discharged by a major part of the committee. One member might as well release a debt without satisfaction, as impose a liability upon the corporation by an admission.

We think, then, this item of fifty dollars is barred, and the judgment of the county court is reversed, and judgment for the plaintiff for $ 21.39, adding the interest on it from the time of the report of the auditor.