RUTHERFORD v. WABASH RAILROAD COMPANY, Appellant.

Division One, December 23, 1898.

1. **Contract: APPURTENANCE: APPLICATION.** The word appurtenance used in a contract can not be applied to the thing which is the principal subject of the contract, but must be applied to something that is *incidental* and *inferior* to the principal thing.

2. ———: ———: ———: COAL MINE. A railroad company made a lease of a part of its right of way, described by metes and bounds, to plaintiff, on which were certain chutes and sheds connected with his coal mine, and provided that it should be exempt from

damages from fire to any buildings "that may be erected on the land herein leased or their appurtenances or contents." *Held*, that the word "appurtenances" did not include the coal mine, pit-heads or other of the mining property outside the land described in the lease, but that plaintiff's property within those limits was an appurtenance of that outside; *and*, this being true, the railroad company was liable for all the *outside* property destroyed by fire communicated by its engines to the property situated on the leased premises, and from it to that outside, the two being connected by sheds, etc.

*Appeal from Randolph Circuit Court.*—Hon. John A. Hockaday, Judge.

Affirmed.

George S. Grover for appellant.

(1) The plaintiff was not entitled to recover in this case because, under the lease in evidence, whose validity is unquestioned here, the plaintiff assumed the risk of fire to the entire plant, whether located on defendant's land or not. Railroad v. Railroad, 108 Mo. 298; Taylor on Landlord and Tenant [5 Ed.], sec. 161; Woodfall on Landlord and Tenant [1 Am. Ed.], p. 141; Wood on Landlord and Tenant [2 Ed.], secs. 208 and 209; Baker v. Bessey, 73 Me. 472; 1 Am. and Eng. Ency. Law, 642; Ins. Co. v. Railroad, 70 Fed. Rep. 201; Griswold v. Railroad, 90 Ia. 265; Ins. Co. v. Railroad, 12 Am. R. R. and Corp. Cases, 564; Stephens v. Railroad, 41 Pac. Rep. 783; Sparks v. Hess, 15 Cal. 186; Otis v. Smith, 9 Pick. (Mass.) 293; Doane v. Broad St. Ass'n, 6 Mass. 332; Ammidown v. Ball, 8 Allen (Mass.), 293; Mott v. Palmer, 1 N. Y. 564; Thomas v. Wiggers, 41 Ill. 471; Curtice v. Norton, 58 Mich. 411; Hoskins v. Brown, 76 Me. 68; Bank v. Miller, 6 Fed. Rep. 545; Doyle v. Lloyd, 64 N. Y. 432; Whalley v. Thompson, 1 B. & P. 371; Pearson v. Spencer, 1 B. & S. 571; Lowell v. Strahan, 145 Mass. 1; Buchanan v. Ins. Co., 61 N. Y. 26; Thropp v. Field, 26 N. Y. 82; Isham v. Morgan, 9 Conn. 374; Huttemeier v. Albro, 18 N. Y. 48.

A. H. WALLER and WILLIAM A. ROTHWELL for respondent.

(1) By virtue of the provisions of section 2615, Revised Statutes of 1889, plaintiff was primarily entitled to recover of defendant his entire loss, and he is still so entitled to recover, except in so far as such right was cut down and limited by the agreement. R. S. 1889, sec. 2615; Campbell v. Railroad, 121 Mo. 340. (2) The agreement has no reference to property of plaintiff other than that situate within the metes and bounds given in said agreement, and construed altogether and as a whole said agreement by its terms limits the release clause therein contained to property located within said metes and bounds. Barrett v. Bell, 82 Mo. 112; Frey v. Drahos, 6 Neb. 1; Green v. Collins, 86 N. Y. 249. (3) General words in a release are qualified by a preceding particular recital of the object and purpose of the release. Todd v. Mitchell, 168 Ill. 199. (4) In any aspect of the case defendant's contention that the buildings of plaintiff situate on his own land were appurtenant to the structures erected by him on defendant's right of way is untenable for the reasons: *First*. Because the admitted facts show that the mine proper, pit-head, hoist, power and power house constituted the principal part of the plant, and that the chutes and sheds situate on defendant's right of way were additions thereto, erected for the convenient coaling of engines. Wilson v. Beckwith, 117 Mo. 74. *Second.* The chutes and sheds situate on defendant's right of way were personal property, whereas the shaft, pit-head and other structures situate on plaintiff's own land were part of the realty. Real estate can not be appurtenant to mere movable property. *Third.* Since the agreement must be strictly construed, the word "appurtenances," as used in the contract, must be held to have been used in its technical sense, and when so used in the conveyance of a piece of land "by defined boundaries" with "appurtenances," other land not included in the boundaries will not pass as appurtenant to the

grant. Woodhull v. Rosenthal, 61 N. Y. 382; Riddle v. Littlefield, 51 N. H. 508; Ogden v. Jennings, 62 N. Y. 530.

BRACE, P. J.—This is an action for damages to plaintiff's property by fire caused by one of defendant's engines. The defense was that plaintiff by contract assumed the risk of damage by fire to his premises. The case was tried and adjudged below on the contract and an agreed statement of facts. The judgment was for the plaintiff for $3,000 and the defendant appealed. The agreed statement of facts is as follows:

"The parties, plaintiff and defendant, by their respective attorneys, for the purpose of this trial and for use in this case at any time, agreed upon and admitted the following statement of facts:

"That the said Wabash Railroad Company, as party of the first, and the said W. T. Rutherford, as party of the second part, on the 13th day of February, 1893, entered into a certain agreement of lease, as alleged in defendant's answer, which said agreement was in words and figures as follows, to wit:

"This agreement, made and entered into this 13th day of February, A. D. 1893, by and between the Wabash Railroad Co., party of the first part, and W. T. Rutherford,, of Huntsville, in the county of Randolph and State of Missouri, party of the second part,

"*Witnesseth,* that the said party of the first part, for and in consideration of the sum of five dollars per annum in advance to said party of the first part paid by said second party, and upon the express condition and stipulation that said second party shall assume all risk of fire from every cause, and shall hold and keep harmless said first party from any and all damages whatsoever from fire or any other cause, to any building or buildings that may be erected on the land herein leased, or their appurtenances or contents, which guarantee enters into and forms part of the consideration that induces said

first party to make this lease; and for the further covenants and agreements hereinafter contained on the part of the second party to be kept and performed, hereby grants unto the said second party the right to occupy and use for the purposes of mine and buildings near the following described part of the grounds of the said party of the first part, at Huntsville, county of Randolph, and State of Missouri, to wit: Beginning at a point on the west end of the coal chute four and one-half feet north of the north rail of the Wabash main track. Thence eastward parallel to the main track fifty-five feet to the east end of the coal chute. Thence northward along the east end of the chute two and one-half feet. Thence eastward parallel to the main track and seven feet north of the north rail of the same, eighty feet. Thence northward at right angles to last course forty and one-half feet to the north line of the right of way. Thence westward along the right of way line two hundred and twenty-six feet. Thence southward at right angles forty and one-half feet to a point seven feet north of the north rail of main track. Thence eastward parallel to the main track ninety-one feet to the west end of the coal chute. Thence southward two and one-half feet to the point of beginning.

"And said first party further covenants, to and with said second party, that said second party shall have the right to occupy and use such portions of land, selected and designated as aforesaid, for the location of said mine and buildings for and during the full term of two years from the date of this agreement, unless the occupancy of said premises shall be sooner terminated in the manner hereinafter provided.

"And the said second party covenants and agrees with the said party of the first part, to pay all taxes that may be assessed on said mine and buildings and the herein leased premises, and to conduct the business of storing and forwarding coal or other property, according to such rules as the party of

the first part may prescribe in relation to such business at its stations generally.

"And the said second party hereby further agrees for himself, his heirs or assigns that they hereby assume all risk of fire from any cause whatsoever; that if any insurance is effected during the continuance of this lease or any renewal thereof by said second party, or any party interested therein on said mine and buildings or the contents thereof, that said second party will, before such insurance is effected, exhibit this lease to the agent or agents, officer or officers of the insurance company or companies through whom said mine and buildings are to be insured, and procure the indorsement hereon of said agent or agents, officer or officers, and also upon the policies of insurance issued by them or any renewal thereof, to the effect that said insurance company will not, under any circumstances bring or cause to be brought any claim or action at law, against the party of the first part, its successors or assigns, for damages occurring during the term of this lease, or any renewal thereof, by fire or otherwise, to the said . . . . . . or appurtenances erected on said leased land or to the contents thereof.

"And it is hereby mutually agreed between the parties hereto, that in case said mine and buildings shall at any time during the continuance of this agreement he destroyed by fire or otherwise, this contract shall not cease and determine by reason thereof, but the said second party shall be allowed thirty days within which to rebuild the same, and in case the said mine and buildings shall not be, by said second party, rebuilt in all respects equal to the one so destroyed, within thirty days from the time of its destruction by fire or otherwise, then this contract shall, at the option of the party of the first part cease and determine, and be no longer binding upon the parties thereto.

"And the party of second part also further agrees with the party of the first part that he will remove said buildings

from off the grounds of said party of the first part, at any time during the aforesaid term of two years, after having received from the said party of the first part thirty days' notice to do so.

"And the party of the first part agrees to recognize said mine and buildings as the property of the party of the second part and to permit him to remove the same at any time from the premises of the party of the first part.

"And it is also expressly understood between the parties hereto, that at expiration of the time mentioned for the continuance of the right herein granted to the second party, the said second party shall have reasonable time for removing said buildings from off the grounds of the party of the first part, said removal to be at the expense of said second party; and till such removal, the provisions of this lease regarding damages occasioned by fire, or otherwise, shall remain in full force and virtue.

"And said second party hereby agrees that he will not sub-let said leased land, nor assign nor transfer this agreement without the consent in writing of the general manager of the party of the first part, indorsed hereon, and subject to all the conditions, covenants, limitations and restrictions of this lease, and that he will use said leased land for no other purpose than that contemplated by the terms of this contract.

"And the said party hereby further agrees to paint all buildings erected by him on the herein leased premises a color in conformity with the uniform color established by said party of the first part for its buildings generally.

"And it is distinctly understood and agreed between the parties hereto, that in case the said second party shall make default in any of the covenants herein contained on his part, to be kept and performed, or shall insure said mine and buildings on said leased land without procuring the indorsement hereon, as hereinbefore provided in that respect, then in that case it shall and may be lawful for the said first party, its assigns, successors, agent or attorney, at its election, to declare

this agreement at an end, and into or upon said premises, with the said mine and buildings and appurtenances thereon or any part thereof, to enter with or without process of law, and the said second party or any persons occupying said premises and said mine and buildings or appurtenances, to expel, remove and put out, using such force as may be necessary for that purpose, and occupy and possess said premises and hold and occupy the mine and buildings and appurtenances thereon till they can be removed or the conditions of this lease shall have been complied with by said second party; but no action or proceedings under this paragraph by the party of the first part shall in any manner release the party of the second part from the obligations and duties assumed as regards damages occasioned by fire, or otherwise as provided for in this agreement of lease.

The Wabash Railroad Company,
"Recommended:                              Chas. M. Hays,
    "H. L. Magee,                      Vice-Pres. and Gen. Mgr.
        "General Superintendent.

"W. T. Rutherford [Seal].

"And it was then and there so agreed and admitted by the said parties, that the shaft at the coal mine in controversy was situated on the land of plaintiff Rutherford, north of defendant's right of way, and that the pit-head over said shaft was also situated on plaintiff's land with chute extending therefrom over defendant's right of way as far as the first side track so as to load cars; that the hoisting engine and the buildings covering the same was situated on plaintiff's land and was detached from the pit-head and was connected therewith by a wire rope which extended to the pit-head and was used for hoisting purposes in connection with the hoisting engine, that the blacksmith shop also stood on plaintiff's land to the east of the pit-head and was detached therefrom; that after said mine had been sunk and the aforesaid structures erected, the chutes were extended south over the side-track

to the defendant's main track for the purpose of coaling engines on defendant's road, and that these chutes and the shed over the same were situated on defendant's right of way and within the ground covered by the lease offered in evidence, and that they were connected with and attached to the pit-head and were substantially a part of the same structure; and that all of these improvements were used together and contituted one mining plant; that plaintiff operated said mine for several years after the structures aforesaid were so erected, and that the mine was not being operated at the time it was burned; that all of the structures were erected by plaintiff as they stood at the time of the fire prior to the time the said lease was executed.

"It was also further admitted that the defendant was a corporation as averred in the petition, and as such owned and operated the Wabash railroad, which ran through plaintiff's premises, and that one of defendant's locomotive engines operated on said railroad on said —— day of August, 1894, set fire to plaintiff's premises; that said fire was set by means of sparks from said engine which fell upon the roof of the shed over said coal chute, which said chutes and shed were located on defendant's right of way and within the limits of the property leased to plaintiff as aforesaid; that said fire was communicated to the pit-head engine house, blacksmith shop and other property situate on the lands of plaintiff, and all said property was thereby destroyed. It was further admitted that the value of the property so destroyed, situated on plaintiff's premises, to wit, an engine house and engine and boiler and tools therein contained, also pit-head and building covering the same, two hoisting cages and wire rope, thirty-five coal cars, one miner's scales contained in said building, blacksmith shop and tools, and T rails, were of the value of $3,000, and that said destroyed property so valued by agreement as aforesaid at said sum of $3,000, was situated at the time of the fire

outside of the defendant's right of way and outside of the limits of the ground described in the lease admitted in evidence. It is further admitted that plaintiff, at the time of the fire, was the owner of the property so destroyed by fire and of the real estate upon which the same was situated."

The original lease copied into the statement was read in evidence in connection therewith, and a *fac-simile* thereof appears in the transcript. The judgment was for the value only of the property located on plaintiff's land. The only question in the case is, whether under the terms of the lease the plaintiff assumed the risk of fire to his entire property or only to that portion of it located on the defendant's right of way?

The blank form used in the preparation of this lease was evidently not intended nor adapted to the purpose of a lease of defendant's right of way in the circumstances of this case. The form contemplated erections *in futuro*. The contract, however, was evidently intended to apply to erections already made, and the covenant of the plaintiff to hold the defendant harmless from damage from fire or any other cause to "any building or buildings *that may be erected* on the land herein leased, or their appurtenances or contents," ought to be read with the words "that may be erected" left out, making the subject of the covenant "any building or buildings on the land herein leased, or their appurtenances or contents." The strip of defendant's right of way described by metes and bounds in the contract and the building or buildings on that strip of ground, is the subject-matter of the contract. The plaintiff's land and the buildings on it, are not the subject of the contract. With that land and the erections on it the contract has nothing to do. It has to do only with buildings on the strip leased, their appurtenances and contents. The thing leased was the strip of defendant's right of way with the erections thereon. That was all the defendant did or could lease or intended to lease. The erections thereon are the subject-matter of this contract, and to them it must be confined unless

something can be found in the contract or its subject-matter that requires that the covenant should be extended further. The sole ground of defendant's contention that it should be extended further, to include the erections on plaintiff's land, hangs upon the word "appurtenances" in the covenant. Is there anything in the contract itself to support this contention? The word was printed in the blank form, and must have the same meaning, if any, in each connection in which it was used. In the last clause it was used twice, and in this connection: " . . . in case the said second party shall make default . . . . . . . then, in that case, it shall be lawful for the said first party . . . . . . . to declare this agreement at an end and enter into or upon said premises with the said mine and buildings and appurtenances thereon, or any part thereof, to enter with or without process of law . . . . . . . and occupy and possess said premises and hold and occupy the mine and buildings and appurtenances thereon."

Now if the meaning contended for by counsel for defendant is to be attributed to the word "appurtenance" in this contract, then the defendant in case of default had the right to enter upon, occupy and possess not only the premises leased, but also the premises of the plaintiff with its mine and buildings. Evidently such was not the intention of the parties. Nevertheless the word is in this misfit contract and to it some meaning must be attached consistent with the intentions of the parties. There is no difficulty about the meaning of the term. An appurtenance is "in common parlance and legal acceptation something belonging to another thing as principal, and which passes as an incident to it." Webster Int. Dic. "A thing used with and related to or dependent upon another thing more worthy and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant. A thing belonging to another thing as principal and which passes as incident to the principal thing." 1 Am. and Eng. Ency. Law, 641. It is true that the group of

buildings situated on plaintiff's land and constituting his mining plant had been extended on the defendant's right of way over its sidetrack to its main track, by means of the chutes and the shed over them located on the right of way, and that these chutes and shed, were connected, and used in connection with the other buildings of plaintiff's mining plant. From which defendant's counsel would have us conclude, that the mining plant, consisting of the structures mentioned in the agreed statement of facts on plaintiff's land, *was the appurtenance,* and the chutes and shed, on the right of way, were *"the principal thing," "the thing more worthy," the thing on which plaintiff's plant depended*—when in fact the only conclusion that can be drawn from the facts is exactly the reverse. The mining plant on the plaintiff's land was the principal thing, the chutes and shed the thing dependent thereon. The parties in this contract were dealing simply with an appurtenance to which the principal thing could not in the nature of things be appurtenant. That word in the contract can not be applied to the principal thing, but must be applied to something inferior and incidental to the thing; about which they were alone treating. The plaintiff sued for damages to the whole plant including the structure on the right of way. The trial court by its judgment in effect held that the covenant against fire covered the structure on the right of way only, and gave judgment for the damages to the structures on plaintiff's land only; and in so doing we think, committed no error. The judgment is affirmed. All concur.