## 11680

### HILL v. SOUTHERN RY. CO.

#### (126 S. E., 642)

1. RAILROADS—CONTRACT HELD TO INDEMNIFY RAILROAD FROM LOSS BY FIRE, THOUGH ORIGINATING ON PART OF WAREHOUSE NOT LOCATED ON RIGHT OF WAY.—Where only part of warehouse was within railroad's right of way, warehouseman's contract, to indemnify railroad from loss resulting by reason of presence of warehouse on right of way, precluded recovery by warehouseman for loss of cotton in warehouse destroyed by fire communicated by sparks from engine, though fire originated on that part of warehouse not located on right of way.

2. RAILROADS—PLATFORM HELD PART OF "WAREHOUSE" WITHIN CONTRACT TO INDEMNIFY RAILROAD FROM LOSS.—Contract to indemnify railroad from loss, arising by reason of presence of warehouse on right of way, *held* applicable to loss of cotton destroyed by fire while on warehouse platform, since platform constituted as much a part of warehouse as the main building.

3. TRIAL—REFUSAL TO PERMIT PLAINTIFF'S COUNSEL TO COMMENT ON EVIDENCE SHOWING THAT DEFENDANT WAS INSURED HELD PROPER.— In action against railroad for loss of cotton destroyed by fire set by sparks from locomotive, refusal to allow plaintiff's counsel to comment on evidence tending to show that railroad had insurance on cotton *held* proper.

Before PEURIFOY, J., York, November, 1922.    Affirmed.

Action by W. L. Hill against the Southern Railway Company.    Judgment for defendant and plaintiff appeals.

*Mr. W. W. Lewis,* for appellant, cites: *Insurable interest:* Code 1922, Vol. III, Sec. 4910; 24 S. C., 366. *Rule of "Ejusdem generis" applies:* 17 A. & E. Enc. Law,

(2nd Ed.), 6. *Restrictive (not enlarging) words will not be added to a contract which the parties saw fit to omit:* 85 S. C., 169.

*Messrs. McDonald & McDonald* and *Frank G. Tompkins,* for respondent, cite. *Construction of contract by parties thereto entitled to great weight:* 81 S. C., 10. *Validity of such a contract:* 121 S. E., 600; 85 S. C., 165. *As against public policy:* 21 Fed. Rep., 299; 50 Am. St., 17; 77 S. C., 471. *As exempting railways from liability for damages:* 99 Am. St. Rep., 314; 116 Am. St. Rep., 339; 44 L. R. A. (N. S.), 1127 and note 428. *Incompetency of testimony and argument:* 92 S. C., 258; 120 S. C., 285; 125 S. C., 447.

February 12, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $15,473.05 the net loss on 142 bales of cotton alleged to have been partially destroyed by fire communicated by sparks from the defendant's engine.

The defendant supplemented its plea of general denial by setting up a contract between the plaintiff and the railroad company, whereby, in consideration of the defendant's permission to allow certain warehouses to be placed on its right of way, the plaintiff agreed to indemnify the defendant from all loss by fire, however resulting "arising by reason of the presence of said warehouses or either of them upon the right of way of the railroad company and the occupation and use by the licensee of the said right of way for the purposes aforesaid."

The situation can be best understood by a reproduction, on a reduced scale of the blueprint in evidence, showing the locations of the different warehouses, which the reporter will append to his report of the case.

SOUTHERN RAILWAY
SHARON, S.C.
CHARLESTON DIVISION.
SKETCH SHOWING SPACE TO BE LEASED TO
THE HILL BANKING & MERCANTILE CO.

Briefly stated, the plaintiff entered into a written contract with the railway company, by which he was permitted to locate and operate three warehouses, two of which were within the limits of the railway company's right of way, and the third partly so.   For convenience they will be referred to as warehouses Nos. 1, 2 and 3.   No. 1, was 25x100 feet, on the north side of the main line, entirely within the right of way; No. 2, was 20x100 feet, on the south side of the main line also entirely within the right of way; No. 3, was 20x50 feet, located partly (16 feet) within the right of way, and partly (34 feet) outside of it, at right angles with the main line of the right of way.

Warehouses Nos. 1 and 2 are not involved in this litigation and no further reference to them is necessary.   On the west side of warehouse No. 3, there was a door, which, as expressed in the argument, "straddled" the line of the right of way; that is, to say the line of the right of way passed through the door.   Between the door and the southwest corner of the warehouse and extending along the south end of the warehouse there was a platform 10feet wide, used for the purposes of transferring cotton into the warehouse, of storing cotton when the warehouse was full, and of transferring cotton not intended to be stored in the warehouse, by means of skids and trucks, to the platform of warehouse No. 2, there to be loaded into cars for shipment.   The portion of the platform on the west side of warehouse No. 3, between the door and the northwest corner, within the right of way, was not adapted to the placing of cotton.   The entire platform on the west and south sides of warehouse No. 3, was outside of the line of the right of way, with the exception of the portion above referred to.

On October 1, 1920, the plaintiff had about 3 bales of cotton in warehouse No. 3, in that part of it outside the right of way; he had also a number of bales upon the platform on the west and south sides of that warehouse, and

a number of bales on the ground near the warehouse, in all 142 bales, all of which were placed outside of the right of way. None of the cotton on the platform or on the ground was intended to be stored in the warehouse, but all of it was in process of being transferred from the ground to the platform of warehouse No. 3, and thence by skids and trucks to the platform of warehouse No. 3, to be loaded in cars for shipment. The entire lot of cotton consisted of 200 bales, 58 of which had been loaded in cars, and the remainder, 142 bales, were awaiting the same disposition.

Some time in the afternoon of October 1, 1920, a freight train of the defendant, passed the premises on which the warehouses were located, and stopped at the station of Sharon, a few hundred yards to the west. A very short time after the train passed, variously estimated at from three to six minutes, fire broke out. The precise point of its origin is not definitely determined. Witnesses for the plaintiff testify that it broke out in the cotton placed on the platform on the west side of warehouse No. 3, between the door and the southwest corner, outside of the right of way, and it appears to be assumed by the appellant's counsel that this was the point of origin. He says in his printed brief:

"A few moments after it (the train) had passed the warehouse in question, a fire commenced burning on a bale of cotton on the platform."

Witnesses for the defendant testify that the fire broke out near the door, and was running up the side of the building into the shingles. The plaintiff cannot object to our assumption that the fire broke out in the cotton placed on the west side of the warehouse, between the door and the southwest corner, on the platform, as his witnesses so testify and his counsel so avers, outside of the right of way. We will therefore consider the case as if that were a conceded fact.

In reference to the contention of the defendant that the contract of indemnity relieved it from all liability, the Cir-

cuit Judge, in an exceedingly clear and able charge, instructed the jury: (1) That the contract released the railroad company from liability on account of any cotton that was in warehouse No. 3, regardless of the actual location of the cotton in the warehouse, that is, whether within or without the right of way; (2) that the contract released the railroad company from liability on account of the burning of any cotton that had been placed upon the platform of warehouse No. 3, to be transferred to and stored in that warehouse, regardless of the actual location of the cotton on the platform, that is, whether within or without the right of way; (3) that the contract did not release the railroad company from liability on account of the burning of any cotton that had been placed either on the platform of warehouse No. 3 or on the ground nearby, temporarily, in transit, to be loaded in cars, and having no connection with the use of the warehouse as such; (4) that the contract released the railroad company from liability on account of the burning of any cotton that had been placed in the warehouse, on the platform or on the ground nearby, if sparks from the engine set fire to the warehouse, at a point either within or without the right of way, and sparks from the burning warehouse were communicated to such cotton.

The main contention of the appellant, as we gather from the argument of his counsel, is that it indisputably appears that the fire originated either upon a bale of cotton on the platform of warehouse No. 3, or on the warehouse just beside that bale, both points of which were outside of the right of way; that in neither event could it be said that the presence of the warehouse on the right of way was a contributing cause to the setting fire by the railroad company to either the cotton or that portion of the warehouse outside of the right of way, or that the fire arose from "the occupation and use of said right of way for the purpose aforesaid."

We do not think that the appellant's counsel has properly interpreted the indemnity contract. What it says and what it means is that, if the loss or injury, not the fire, arose by reason of the presence of the warehouse upon the right of way and of the occupation and use by the licensee of the right of way, the indemnity should have effect. Regardless, then, of where the fire originated, whether on or off the right of way, the location of the warehouse, although partly, on the right of way, necessarily contributed to the loss or injury. There was no error therefore in the interpretation of the contract in this respect by the Circuit Judge.

The Circuit Judge was really more favorable to the plaintiff in the third proposition stated above than he should have been, in reference to cotton that had been placed upon the platform of warehouse No. 3. He held that, unless the cotton was so placed to be transferred and stored in the warehouse, the indemnity was not effective. The platform was as much a part of warehouse No. 3 as the main building, and if it should be used as a place for local storing thence to be transferred to the platform of warehouse No. 2 for loading and shipment, the warehouse would have been as much utilized as a warehouse as if it had been the purpose of the plaintiff to transfer the cotton from the platform into the warehouse.

That the Circuit Judge is right in not allowing counsel for the plaintiff to comment on the evidence tending to show that the railway company had insurance upon the cotton is demonstrated by the cases of *Horsford v. Glass Co.,* 92 S. C., 258; 75 S. E., 533. *Burgess v. Germany Roy-Brown Co.,* 120 S. C., 285; 113 S. E., 118. *Duke v. Parker,* 125 S. C., 442; 118 S. E., 802.

We find no error in the trial. The case was fairly submitted under a full and clear charge, and we see no ground for disturbing the verdict.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur. MR. CHIEF JUSTICE GARY did not participate.