MANCHESTER MARBLE COMPANY *v.* RUTLAND RAILROAD COMPANY.

May Term, 1926.

Present: WATSON, C. J., POWERS, SLACK, BUTLER, and FISH, JJ.

Opinion filed February 26, 1927.

*Railroads—Construction of Provision in Lease Relieving Railroad from Liability for Damage by Fire—Principal and Agent—Ratification of Agent's Unauthorized Act—Inadequate Briefing—Sufficiency of Consideration—Negligence by Fire—Proximate Cause—Limitation of Application of Provision in Lease Exempting Railroad Company from Damage for Loss by Fire.*

1. Provision in railroad's lease of part of its right of way to Marble Company that lessee should assume all risk of damage to lessee's property by fire, *held* valid and not against public policy so far as lessee's property situated on railroad's right of way was concerned, notwithstanding provisions of G. L. 5256, providing that railroad shall be responsible in damages for injury to building or other property caused by fire negligently communicated by its locomotive engine.

2. Provision in railroad's lease of part of its right of way to marble company that lessee should assume all risk of damage to lessee's property by fire, *held* to be inapplicable to property situated outside right of way, and not to relieve railroad from liability for its damage by fire as prescribed by G. L. 5256, in view of rule that deed or lease will be most strongly construed against grantor or lessor, and that contract should be strictly construed against party who wrote and framed it.

3. Occupancy by marble company for three years of part of railroad's right of way under lease containing provision that lessee should assume all risk of damage to lessee's property by fire, and exempting lessor therefrom, and payment of annual rentals thereunder for such period, *held* evidence of ratification by lessee of such exemption clause, as to which lessee claimed its agent executing lease acted without authority.

4. Where brief cited no authorities in support of claim that corporate act was *ultra vires,* Supreme Court may well refuse claim consideration.

5. Occupancy by marble company of part of railroad's right of way under lease, *held* to furnish sufficient consideration for provision in lease indemnifying railroad from liability for damage to lessee's property by fire, so far as demised premises were concerned.

6. Where a fire burns as one continuous fire, without a break in line of causation, and without aid of any independent agency, injury, if traceable to first fire, is proximate consequence of that fire.

7. Where marble company leased part of railroad's right of way under lease containing provisions that lessee should assume all risk of damage to lessee's property by fire, and indemnify railroad company from liability for damages to lessee's property by fire, *held* that such provisions did not cover lessee's property destroyed by fire outside of right of way, regardless of whether fire was started on or off right of way.

ACTION IN TORT for negligence brought under G. L. 5256. Pleas, general denial and affirmative defense that plaintiff, by written agreement, had assumed all risk of loss by fire to property destroyed, released defendant from all claims of damage therefor, and agreed to indemnify and save it harmless. Replication, denying affirmative defense. Trial by jury at the September Term, 1924, Rutland County, *Moulton,* J., presiding. Verdict directed for defendant, and judgment thereon. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*Webber & Leamy* and *Jones & Jones* for the plaintiff.

*Lawrence, Stafford & Bloomer* for the defendant.

FISH, J.  This is an action brought under G. L. 5256 with a count in negligence.  The defendant answered in general denial and set up the affirmative defense that the plaintiff, by written agreement, had assumed all risk of loss by fire to the property destroyed, and had released the defendant from all claims for such loss and agreed to indemnify and save it harmless.

The plaintiff claimed damages for destruction by fire of its marble mill and property, situated alongside the main line of the defendant railroad in the hamlet of Freedleyville in the town of Dorset in Bennington County, which it claimed was set fire to by a spark or cinder emitted by one of the locomotive engines of the defendant.  The fire occurred in the early morning of October 28, 1923, resulting in a total loss of the plaintiff's plant.

The written agreement under which the defendant claims freedom from liability is a lease dated April 12, 1921, executed on the part of the defendant by Geo. T. Jarvis, vice-president and general manager of the Rutland Railroad Company, and on the part of the plaintiff by P. R. Eaton, president of the Manchester Marble Company.  The premises conveyed are a part of the defendant's right of way 251 feet long and 4.5 feet wide, situated westerly of its side track to the plaintiff's plant.  In the conveyance the right and privilege is given the Manchester Marble Company to maintain 5 guy wires over the right of way and tracks of the railroad and a 3-inch water supply pipe across the right of way and through a culvert of the railroad.  The lease was originally given for one year with provision for an annual rental of $30.10, payable in advance.  The purpose for which the premises were to be let and used are expressed in the lease as being a "location for a loading dock and guy wires and 3-inch water supply pipe."  The provision under which exemption is claimed is this:

> "The said Lessee assumes all risk of loss, damage or injury, by fire or otherwise, to person or property by reason of the condition of said demised premises or of the location of same adjoining or near the tracks of said railroad or by reason of the management or operation of said railroad, and all damage to the property of said Lessee by reason of the operation of said railroad; and releases the Lessor, its successors and assigns, from all claim for such loss, damage or injury sustained by said Lessee, or by any agent or employee of said Lessee, or by any person whomsoever, whether caused by the negligence of said Lessor, its agents or em-

ployees or otherwise.  An the said Lessee agrees to indemnify and save harmless said Lessor, its successors and assigns, from all claim for such loss, damage or injury sustained by said Lessee, or by any agent or employee, of said Lessee, or by any person whomsoever, whether the same be caused by the negligence of the said Lessor, or of its officers, agents, employees or otherwise.''

It is. stipulated in the lease that the lessor may terminate it on giving thirty days' notice in writing, at the expiration of which time the lessor is given the right to re-enter and take possession of the premises.  It is also provided that if the lessee, with the consent of the lessor, holds over and remains in possession after the expiration of the lease it shall be considered as renewed and shall continue in effect from year to year, subject however to be terminated as provided in the lease, until terminated by the lessor by giving thirty days' notice of its intention so to do.  The plaintiff was occupying the premises at the time of the fire under the renewal agreement in the lease, and had made three annual payments of rent under its terms for renewal.

The plaintiff's mill consisted of two structures, a finishing mill with shed attached, and a gang mill with boiler room attached.  The former was the only building that occupied any part of the defendant's right of way.  It was 75 feet long and 42 feet wide at the northerly end, and 30 feet wide at the southerly end, its longer dimension being in the direction of the defendant's tracks.  There was a jog in the building at the southeast corner, 40 feet long and 12 feet wide, which was filled by a shed which had a covered platform and boxing room.  This extended southerly along the right of way 60 feet, then westerly parallel with the south side of the finishing mill 36 feet, then northerly 18 feet to the finishing mill.  This shed extended onto the right of way 4 feet and 6 inches, and in its widest part stood on the land of the plaintiff to the depth of 31 feet and 6 inches. The finishing mill proper stood on the right of way for the length of 35 feet and the width of 3 feet and 8 inches, and on the land of the plaintiff to the depth of 38 feet and 6 inches.  To the westward of the finishing mill and 15 feet from it was the gang mill.  This building, which was 53 feet from the right of way, was 132 feet long and 49 feet wide.  It was separated from the finishing mill by a deep railway of the plaintiff.  The boiler room, which was attached, was 64 feet long, thus making the

whole structure 196 feet in length. The boiler room attachment stood farther from the track than the main gang mill. The part of the leased premises, not occupied by the finishing mill and shed, consisted of a loading dock made of dirt and stones and sustained by a wall standing in front of the track. The dock and finishing mill with shed stood on the right of way at the time of the execution of the lease, and had stood there for a considerable time prior thereto. There was no connection between the finishing mill and the gang mill except a boardway 6 feet by 4 feet and 10 feet from the ground, which protected the belt carrying power from the gang mill to the finishing mill. The gang mill was built of marble and covered with a slate roof. The finishing mill was made of wood and covered with wooden shingles. The plaintiff claimed that the fire was set out in the finishing mill at a place on the plaintiff's land. The defendant denied liability for the fire and made the claim and introduced evidence to show that the fire started in the boiler room on plaintiff's land.

At the close of the evidence the defendant moved for a verdict, on the ground that the evidence did not show negligence on its part, and that the lease released it from liability. The motion was denied when at first made and the case submitted on four special questions to the jury. They were unable to agree; whereupon the motion made at the close of the evidence was stricken off, and being brought forward, the court directed a verdict for the defendant, which was based entirely upon the stipulation of indemnity in the lease. This it held to be valid and a bar to the action. To this ruling, and to the admission of the lease in evidence, the plaintiff excepted.

G. L. 5256, under which the suit is brought, is as follows:

"A person or corporation owning or operating a railroad shall be responsible in damages for injury to a building or other property caused by fire communicated by a locomotive engine on such road, unless due caution and diligence are used and suitable expedients employed to prevent such injury. Said person or corporation shall have an insurable interest in the property along its route, and may procure insurance thereon."

[1] The principal question in the case is whether the defendant is saved from liability by reason of the stipulation for indemnity in the lease. Similar questions have often been before the courts, and they have generally been decided in favor of agreements of the kind covering property within the right of

way, and against such agreements as are designed to exempt property situated outside the right of way. The rule for contracts of the kind first mentioned is stated in a note to *Checkley* v. *Illinois C. R. R. Co.*, 257 Ill. 491, 100 N. E. 942, Ann. Cas. 1914A, 1202, reported in 44 L. R. A. (N. S.) 1127, as follows:

"It is settled law that a railroad company may by contract exempt itself from liability for burning a building upon its right of way, although such burning be due to negligence." In support of this statement of the law the following cases are cited: *Hartford F. Ins. Co.* v. *Chicago, M. & St. P. R. R. Co.*, 175 U. S. 91, 44 L. ed. 84, 20 Sup. Ct. 33; *Southern R. R. Co.* v. *Blunt* (C. C.), 165 Fed. 258; *Stephens* v. *Southern Pac. Co.*, 109 Cal. 86, 41 Pac. 783; 29 L. R. A. 751, 50 A. S. R. 17; *Griswold* v. *Illinois C. R. R. Co.*, 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; *Kennedy Bros.* v. *Iowa State Ins. Co.*, 119 Iowa, 29, 91 N. W. 831; *Greenwich Ins. Co.* v. *Louisville & N. R. R. Co.*, 112 Ky. 598, 66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 99 A. S. R. 313; *James Quirk Milling Co.* v. *Minneapolis & St. L. R. R. Co.*, 98 Minn. 22, 107 N. W. 742, 116 A. S. R. 336; *Wabash R. R. Co.* v. *Ordelheide*, 172 Mo. 436, 72 S. W. 684; *Ordelheide* v. *Wabash R. R. Co.*, 175 Mo. 337, 75 S. W. 149; *American Cent. Ins. Co.* v. *Chicago & A. R. Co.*, 74 Mo. App. 89; *Hahn* v. *Missouri K. & T. R. R. Co.*, 80 Mo. App. 411; *Equitable F. & M. Ins. Co.* v. *St. Louis & S. F. R. R. Co.*, 134 Mo. App. 48, 114 S. W. 546; *Northern Pac. R. R. Co.* v. *McClure*, 9 N. D. 73, 81 N. W. 52, 47 L. R. A. 149; *Mansfield Mut. Ins. Co.* v. *Cleveland, C. C. & St. L. R. R. Co.*, 74 Ohio St. 30, 77 N. E. 269, 6 Ann. Cas. 782; *Cincinnati, N. O. & T. P. R. R. Co.* v. *Salisbury*, 115 Tenn. 402, 90 S. W. 624, 5 Ann. Cas. 744; *Woodward* v. *Ft. Worth & D. C. R. R. Co.*, 35 Tex. Civ. App. 14, 79 S. W. 896; *Missouri K. & T. R. R. Co.* v. *Carter*, 95 Tex. 461, 68 S. W. 159; *Osgood* v. *Central Vermont Ry. Co.*, 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930.

The theory upon which contracts of indemnity are sustained as to property located on the right of way rests upon the principle that the carrier in making them acts in a private capacity and not as a carrier, and in such capacity owes no duty to the public to exercise care and may exact its own conditions as to occupancy. *Griswold* v. *Illinois C. R. R. Co., supra.* It is held in such cases that the public has no interest in the question as to which of the parties shall suffer for the loss. *Hartford Fire Ins.*

*Co.* v. *Chicago, M. & St. P. R. R. Co.,* 175 U. S. 91, 44 L. ed. 84, 20 Sup. Ct. 33.

This Court recognized the general principle governing cases of this kind in the case of *Osgood* v. *Central Vermont Ry. Co., supra.* This was an action for damages for injury to a building and contents erected by the plaintiff on a part of the roadway of the defendant, upon a lease given for the consideration in part, that the plaintiff should indemnify and save harmless the defendant from all liability for loss by fire or otherwise on account of the negligence of the defendant. The damage resulted from the negligent running of defendant's car and engine off a spur track into the building in question. The rule, as stated by this Court, is as follows:

> "In the case at bar the plaintiff had no right to build his shed upon the land of the defendant without its permission, and it was under no obligation to the public nor to the plaintiff to permit him to do it. In granting and receiving the permission to do it, and in erecting it, both parties knew that its proximity to the spur track, the building of which was contemplated, would increase the risk of damage by cars running off that track accidentally or by negligence. The principal consideration expressed in the lease for the license granted, is the stipulation for exempting the defendant from liability to the plaintiff for damage thus occasioned, and the public had no interest in that matter. In *Griswold* v. *Illinois Central Railway Co.,* 90 Iowa, 265, it was held that a stipulation in a contract in which a railroad company permitted a building to be erected on its right of way wherein to do business with the public, that the company should not be liable for damages by fire negligently communicated by it to the building, did not contravene public policy, because the public had no interest as to who should carry the hazard incident to the building's being located as it was."

The plaintiff maintains that the public has an interest in G. L. 5256, and that it would be contrary to public policy as expressed therein to permit the defendant to exempt itself from liability for loss by fire on the right of way, for the reason that it might spread and burn other property adjoining. We are furnished no authority to sustain this claim. The law seems to be otherwise. In general, contracts exempting a railroad from liability for damages to buildings on its right of way are

not invalidated by laws making railroad carriers liable for damages irrespective of negligence, or prohibiting contracts by them in exemption of liability.  Thus, a contract in a lease of property on the right of way that the lessee will protect and save harmless the company from all liability for damage by fire accidentally or negligently communicated is not against a statute providing that "any corporation operating a railway shall be liable for all damages by fire that is set out or caused by the operating of any such railway."  *Griswold* v. *Illinois C. R. R. Co., supra,* which is followed as binding authority also upon an Iowa contract in *Hartford F. Ins. Co.* v. *Chicago, M. & St. P. R. R. Co., supra.*  So, a contract of indemnity by the licensee construed as exempting from liability for negligence, was held not inhibited by the Alabama statute providing that a railroad company is liable "for any negligence on the part of such company or its agents."  *Southern R. R. Co.* v. *Blunt, supra.*  So, contracts of this character have been held good notwithstanding: (1) A constitutional provision that "no common carrier shall be permitted to contract for relief from its common-law liabilities," *Greenwich Ins. Co.* v. *Louisville & N. R. R. Co., supra;* (2) a statute prohibiting a common carrier from exempting itself from liability as such carrier by contract, *Griswold* v. *Illinois C. R. R. Co., supra;* (3) a statute making railroad companies liable for damages by fire from locomotives, irrespective of negligence, which expressly permits the companies to insure against such damages, *Wabash R. R. Co.* v. *Ordelheide, supra; Ordelheide* v. *Wabash R. R. Co., supra; American Central Ins. Co.* v. *Chicago & A. R. R. Co., supra; Hahn* v. *Missouri K. & T. R. R. Co., supra; Equitable F. & M. Ins. Co.* v. *St. Louis & S. F. R. R. Co., supra;* (4) a statute making a railroad company liable for all loss or damage by fire originating upon land belonging to it, caused by operating such railroad, *Mansfield Mut. Ins. Co.* v. *Cleveland C. C. & St. L. R. R. Co., supra.*

The conclusion is inevitable that G. L. 5256 does not make the provisions of the lease in the case at bar inoperative in releasing the defendant from liability as to the loss by fire within the right of way.  As to the right of way, the contract was not against public policy, and was valid and of force.

But the plaintiff says that the lease is void in so far as it relates to any property not on the right of way or on premises of the defendant, if it includes any other property by its terms,

which it denies. In this connection, attention is called to 3 Elliot on Railroads, § 1760, and to the case of *Griswold* v. *Illinois C. R. R. Co., supra,* where the court held that the railway company owed to the public the duty of care, and the public had an interest in the performance of that duty, in respect to property not in the right of way, and that a contract exempting the railroad from such duty would be injurious to the public interests and against public policy. Such contracts have usually been held to be against public policy and void. *Rutherford* v. *Wabash R. R. Co.,* 147 Mo. 441, 48 S. W. 921; *Slocumb* v. *Raleigh, C. & S. R. R. Co.,* 165 N. C. 338, 81 S. E. 335; *West Virginia Pulp & Paper Co.* v. *Baltimore & Ohio R. R. Co.,* 75 W. Va. 549, 84 S. E. 334.

[2] It is unnecessary, however, to consider the foregoing cases, for the reason that the contract relied upon by the defendant does not include by its terms any property that is outside the right of way. The property conveyed in the lease is a strip of land 261 feet long and 4.5 feet wide, let for the purpose, as expressed in the lease, of a "location for a loading dock and guy wires and 3-inch water supply pipe."

The lease is largely a printed form, which was in use apparently by the defendant at the time of its execution, and was not specially prepared for this particular case or occasion. The name of the Rutland Railroad as the lessor is printed in the lease as are provisions about rent, waiver, taxes, subletting, liquor, ordinances, removal of, advertising signs on, and examination of buildings, renewal and surrender of lease, and fire. The provision about fire, which already appears, makes the lessee assume all loss by fire to "person or property by reason of the condition of said demised premises or of the location of the same adjoining or near the tracks of said railroad or by reason of the management or operation of said railroad, and all damage to the property of said lessee by reason of the operation of said railroad." The claim of the plaintiff is that the exemption clause refers to the demised premises only, and the defendant insists that the words "the property of said lessee" include the mill and contents; that the same was one unit, and so connected as to make the terms of indemnity apply to the whole property consumed. In support of this argument it is said that the gang mill and finishing mill were connected by the enclosure for the large belt that carried power from the former to the latter; that

the marble that was sawed in the gang mill was worked in the finishing mill; that the two buildings were a single unit, and operated together as one; that the plaintiff's claim was that the fire spread through the belt enclosure from the finishing mill to the gang mill; that the probability of a fire burning the gang mill which burned the finishing shop was very great; that all the conditions and circumstances show why the word "property" was used in the lease—it was used as an appropriate word to include what was on the leased land and in close proximity to it. The defendant further says that the plaintiff desired to use defendant's property in connection with its business conducted on adjacent property, and the defendant assented thereto in consideration of the annual rental and the insurance against damage by fire; that the defendant declined to encourage the conduct of the plaintiff's business in proximity of its tracks unless released from damage to the *property* of the lessee due to fire; that the defendant had the right to do this, and did do it within the clear intent of the lease.

The plaintiff urges as reasons why the lease does not include property outside the right of way, that it was not specially prepared for this situation but was made on a printed form; that it manifestly was intended to apply only to land belonging to the railroad company, as it had a provision that intoxicating liquor should not be sold on the premises; that the buildings and dock had been there a great many years before the lease was executed; that the plaintiff was occupying the premises before the execution of the lease; that if the parties had intended to include the property not on the right of way the lessor would have specifically done so, and not having so done the demised premises are alone included; that the fire clause is obscure and involved; that it is only by a method of "elastic construction" that it can be "pulled out" of its natural meaning to cover the whole plant, or to cover property outside the right of way; that an analysis of the fire indemnity clause shows that the property referred to is described in no other way than the "property of the said lessee," and that the word "property" must be applied with reference to the land leased and nothing more; that, in order to make such a provision apply to land outside the right of way, it would be necessary to specifically describe it as being included; that there were several boarding houses of the plaintiff on its own land, but at a considerable distance from the track.

16

Were these to be included in the claim of indemnity? Would buildings at the quarry, situated on a hill at some distance from the track of the defendant, be included because a railroad of the plaintiff extended to the quarry? Then attention is called to the defendant's claim that the evidence shows that the total loss was $50,000, the value of the finishing mill $8,000, of the belting running from the gang mill to the finishing mill from $200 to $300, and of the enclosure for the belting $100; that the belt passed through an opening in the gang mill to an opening in the finishing mill.

The argument urged by the defendant in favor of including within the provisions of the indemnity all of the buildings destroyed, on the theory that they were so related to each other as to comprise but one unit is unsound. The construction contended for by the defendant would do violence to the rule that a deed or lease will be most strongly construed against the grantor or lessor. *Mill* v. *Catlin*, 22 Vt. 98; *Conneaut Ice Co.* v. *Quigley*, 225 Pa. 605, 74 Atl. 648; *Chamberlain* v. *Brown*, 141 Iowa, 540, 120 N. W. 334; 35 C. J. 1181 (12), and cases under note 2; *Morgan* v. *Mo., K. & T. R. R. Co.*, 50 Tex. Civ. App. 420, 110 S. W. 978. It would likewise be against the rule that a contract should be strictly construed against the party who framed and wrote it. *West Virginia Pulp & Paper Co.* v. *Baltimore & Ohio R. R. Co.*, 75 W. Va. 549, 84 S. E. 334; *Petty* v. *M. & St. L. R. R. Co.* (Iowa), 136 N. W. 1044.

[3-5] The plaintiff says that no authority was shown in the agent of the plaintiff (Mr. Eaton) to make the exemption clause in the lease; that the same was *ultra vires,* and was without consideration. The fact that the plaintiff had occupied the premises since 1921, and had paid rentals annually under the lease for three years, was evidence of a ratification. *Middlebury College* v. *Williamson*, 1 Vt. 212; *Whitewell* v. *Warner*, 20 Vt. 425; *Lyman* v. *Norwich University*, 28 Vt. 560; *Conant* v. *Bellows Falls Canal Co.*, 29 Vt. 263; *Windham Provident Institution* v. *Sprague*, 43 Vt. 502. We are referred to no authority to sustain the claim that the act was *ultra vires,* and on this ground may well dispose of this question on the authority of *McAllister* v. *Benjamin*, 96 Vt. 475, 121 Atl. 263, against the plaintiff. The lease is valid in its provisions as to indemnity in so far as they apply to the demised premises, and as to these it cannot be said that the lease is without consideration. The plaintiff argues that

because the structures and retaining wall were standing at the time, the lease was executed, and the annual payment of rent furnished the only consideration therefor, that there was no consideration for the exemption clause, and the railroad company ran no extra risk.   This overlooks the fact that the railroad was under no obligation to allow the plaintiff to continue to occupy the premises.   That it was permitted to occupy them for a longer time furnishes a sufficient consideration.

The plaintiff asked the court to submit to the jury the question as to whether the fire caught on or off the right of way, and to its refusal an exception was saved, which has been argued here.   In this connection the case of *Mansfield Mutual Ins. Co., et al.* v. *Cleveland C. C. & St. L. R. R. Co.*, 74 Ohio St. 30, 77 N. E. 269, 6 Ann. Cas. 782, is called to our attention.   In this case one-fourth of the building burned stood on the right of way and three-fourths on the land of the plaintiff.   The lease by its terms did not include property outside the right of way, but the court held that the building was an entirety, that the setting fire to that part of it that was on the right of way was the proximate cause of the entire loss, and that when that part was set on fire the probable consequence was that the entire building would be a loss.   It was held, accordingly, that the whole structure was included in the terms of indemnity.   It will be seen that this case is an authority for both parties—for the plaintiff for the reason importance is attached to the fact that the fire was set to that part of the building that was on the right of way, and for the defendant for the reason that the building being an entirety it was all included in the provisions of indemnity.

The only other case that a diligent search of the authorities discloses, that is in point, is that of *Hill* v. *Southern Ry. Co.* (1925), 131 S. C. 159, 126 S. E. 642.   Here a warehouse of the plaintiff was one-third on the right of way and two-thirds off the same.   Plaintiff recovered below for 3 bales of cotton that were situated in the portion of the warehouse that was outside the right of way.   The fire originated outside the right of way, and it was argued that the presence of the building was not a contributing cause to the setting fire thereto in the portion outside the right of way and the contents situated therein, and that the fire did not arise from "the occupation and use of the right of way for the purposes aforesaid"—the words quoted apparently being from the language of the lease.   In affirming the judgment the court said:

"We do not think that the appellant's counsel has properly interpreted the indemnity contract. What it says and what it means is that, if the loss or injury, not the fire, arose by reason of the presence of the warehouse upon the right of way, and of the occupation and use by the licensee of the right of way, the indemnity should have effect. Regardless, then, of where the fire originated, whether on or off the right of way, the location of the warehouse, although partly on the right of way, necessarily contributed to the loss or injury."

The reasoning of neither of the cases just discussed is very convincing, nor are the facts in either case just like those in the instant case. In each of the cases a very substantial part of the building stood on the right of way, while in this case the part that occupied the land of the railroad was very small. The reasons for the two decisions are placed on entirely different grounds. It is suggested in the instant case that an appraisal of the property of the plaintiff that was destroyed on the demised premises can readily be made, and we hold that, whether the fire originated on or off the right of way, the provisions of indemnity apply only to such property of the plaintiff, buildings and personalty, as was situated on the demised premises when consumed by the fire.

In the case of *Kansas City Ft. S. & M. R. R. Co.* v. *Blaker,* 68 Kan. 644, 75 Pac. 71, 64 L. R. A. 81, 1 Ann. Cas., 883, the railroad had a stipulation with Blaker that it should not be liable for the burning of property erected or stored on the rented premises. He had built an elevator and warehouses on a portion of the right of way, and had other property connected with that on the demised premises, all of which was destroyed by fire negligently set out by the railroad company on the demised premises. Damages were claimed for the loss of buildings and property off the right of way, which had been set fire to by the fire spreading from the right of way. It was claimed that because the fire was communicated from structures rightfully on the right of way to property outside that no recovery could be had, but the court held otherwise, saying:

"It is next contended that no liability exists, because the fire was communicated from the elevator to other structures not rightly on the right of way, and thus carried along to property not on the right of way. There was, as we have seen, a provision in the lease exempting the company from

loss by fire of property situated on the rented premises. This exemption was not a license, however, negligently to set out fires which might burn the elevator and pass over the right of way, destroying other property. B. F. Blaker & Company assumed the risk of destruction by fire of the right of way which was rented, and nothing more. There was no release from liability for the negligent destruction of other property, although it may have been connected with that situated on the right of way. It is not necessary to a recovery that the fire should have been directly communicated to the property destroyed, nor will the fact that the fire passed over intervening land, in order to reach that destroyed, prevent a recovery. It was a continuous fire, negligently set out by the railroad company, as the testimony of the plaintiff tends to show, and under the authorities, appears to have been the proximate cause of the loss for which the action was brought.''

[6, 7] In *Ide* v. *Boston & Maine Railroad,* 83 Vt. 66, 74 Atl. 401, this Court followed the great weight of authority in holding that where a fire burns as one continuous fire, without a break in the line of causation, and without the aid of any independent agency, the injury, if traceable to the first fire, is the proximate consequence of that fire. See, also, 33 Cyc. 1348, and note 70, where many cases are cited on this point. This being the rule of law, if the defendant set out the fire in the instant case by its locomotive engine, without due caution and diligence being used, and suitable expedients employed to prevent injury in that regard, it would be liable for such damages as were not saved to the defendant by the provisions of indemnity in the lease. The provisions, as we have seen, covered the property of the plaintiff that was on the right of way and no other. We are asked by the defendant to extend the contract it had with the plaintiff by construction so as to make it include the entire plant that was destroyed. This would be an unreasonable construction, and would put a meaning to the contract that was not contemplated by the parties when they executed the lease. It would, moreover, defeat the beneficial results of the rule as to public policy which has been applied in cases of this character. It must be remembered that the defendant is seeking to exempt itself from a statutory liability, and it is going quite far enough to hold that public policy will allow the parties to contract away such a liability without extending the contract by

construction beyond its express terms to cover property situated outside the right of way.   The result is that the provisions of indemnity do not cover the property of the plaintiff that was destroyed by the fire outside of the right of way, without regard to whether it was set out on or off the right of way.

*Reversed and remanded.*

Justice TAYLOR sat in the case when originally heard, but deceased before it was decided.   It was at first assigned to Justice BUTLER and later re-assigned to Justice FISH.