# ORDELHEIDE v. WABASH RAILROAD COM-
PANY, Appellant.

### Division Two, June 9, 1903.

**Railroad: INDEMNITY AGAINST FIRE: POWER TO CONTRACT.** A railroad
company can by contract indemnify itself against loss by fire com-
municated from its locomotives to an elevator which, under the
terms of said contract, has been constructed on its right of way.
It is true that a common carrier can not contract against its own
negligence, for such a contract would be void as against public
policy, but the fact that the railroad is a common carrier has no
place in the trial of such a case, because the owner of the elevator
does not sustain the relation of passenger, shipper or employee to
such railroad.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED.

*Geo. S. Grover, Geo. Robertson* and *G. Pitman
Smith* for appellant.

*A. H. Drunert, J. D. Barnett, H. W. Johnson* and
*C. W. Wilson* for respondent.

Vol 175 mo—22

GANTT, P. J.—This appeal is in this court by virtue of dissent of one of the judges of the St. Louis Court of Appeals. It was argued and submitted, but owing to the fact that a case growing out of the same fire was pending in the Court in Banc, it was deemed best to await the opinion of the whole court on some of the questions involved in both appeals.

The opinion of the Court in Banc will be found reported in Wabash Railroad Co. v. Ordelheide, 172 Mo. 436.

The pleadings and agreed statement of facts upon which this case was determined in the circuit court and Court of Appeals are fully set out in the opinion of Judge BLAND in the St. Louis Court of Appeals, 80 Mo. App. 357, and we adopt the same as follows:

"The petition is as follows:

"'Plaintiff states that the defendant is a corporation duly incorporated under and by virtue of the laws of the State of Missouri, and was at the time of the grievance hereinafter mentioned, as such corporation, the owner and occupier of a certain railroad, together with depots, switches, side-tracks, and facilities for receiving and unloading freight, stock and goods, which said railroad runs through the counties of Warren and Montgomery, in the State of Missouri, and as said corporation was at said time operating, working, managing and running its said railroad by its agents, servants and employees, and using thereon its locomotives, engines, cars and trains. That on or about the 6th day of April, 1895, the plaintiff was the owner of a certain building, used as a warehouse, elevator or grainhouse, together with horsepower, belting and all appliances and machinery necessary and requiring to run, work and operate the same, which said building, with the said horsepower, belting, appliances and machinery therein, stood adjoining or nearby the depots, switches, side-tracks, at or near the defendant's station or depot at Wright City in said Warren county, all of

which was of the value of two thousand dollars. That on or about said date the defendant so carelessly and negligently operated, worked, run and managed its said railroad, and carelessly and negligently used thereon defective and insufficient locomotives and engines, and so carelessly, negligently and unskillfully operated, worked and managed and run its locomotives, engines, cars and trains on its said switches, railroad and side-tracks, that fire escaped from its locomotives and engines and was communicated to plaintiff's said building, warehouses, elevator or grainhouse, and the same, together with said horsepower, belting and appliances, and machinery therein, as aforesaid, were damaged and destroyed, to plaintiff's damage in the sum of two thousand dollars. Wherefore, by reason of the premises, the plaintiff says he is damaged in the sum of two thousand dollars, for which and costs of suit he asks judgment.'

"Defendant answered as follows:

" 'Now comes the defendant in the above entitled cause, by its attorneys, and for its answer to the petition of plaintiff therein filed, admits that it is and was on the 6th day of April, 1895, a corporation duly incorporated under and by virtue of the laws of the State of Missouri. Defendant denies each and every other allegation contained and set forth in plaintiff's petition. For other and further answer to the petition of the plaintiff, defendant says that on or about the first day of November, 1892, the plaintiff herein entered into a certain written and printed agreement with the defendant for the lease of certain ground then belonging to the defendant in Warren county, Missouri, in said agreement described, for the purpose of erecting thereon a certain grainhouse, said agreement expiring, under its terms, on or about the 31st day of October, 1897, which said agreement was in words as follows, to-wit:

" ' "This agreement, made and entered into this first day of November, A. D. 1892, by and between the

Wabash Railroad Company party of the first part, and E. F. Ordelheide, of Wright, in the county of Warren, and State of Missouri, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of one dollar per annum, in advance, to said party of the first part paid by said second party, and upon the express condition and stipulation that said second party shall assume all risk of fire from every cause, and shall hold and keep harmless said first party from any and all damages whatsoever, from fire or any other cause, to any building or buildings that may be erected on the land herein leased, or their appurtenances or contents, which guarantee enters into and forms part of the consideration that induces said first party to make this lease; and for the further covenants and agreements hereinafter contained on the part of the second party to be kept and performed, hereby grants unto the said second party the right to occupy and use for the purpose of a grainhouse, the following described part of the grounds of the said party of the first part, at Wright, county of Warren, and State of Missouri, to-wit: at a point on the west line of South street, twenty-three feet north of the center of the Wabash main track; thence northward along the south side of South street forty-five feet to the north line of Wabash right of way; thence westward along the right of way line one hundred and ten feet; thence southward at right angle thirty-eight feet to a point seven and one-half feet north of the center of the Wabash house-track; thence eastward parallel to the house-track, and seven and one-half feet from the same, to the point of beginning. And said first party further covenants to and with said second party, that said second party shall have the right to occupy and use such portions of land, selected and designated as aforesaid, for the location of said grainhouse, for and during the full term of five years from the date of this agreement, unless the occupancy

of said premises shall be sooner terminated in the man-
ner hereinafter provided.   And the said second party
covenants and agrees with the said party of the first
part, to pay all taxes that may be assessed on said
grainhouse and the herein leased premises, and to con-
duct the business of storing and forwarding grain or
other property, according to such rules as the party
of the first part may prescribe in relation to such busi-
ness at its stations generally.   And the said second
party hereby further agrees for himself, his heirs or
assigns, that they hereby assume all risk of fire, from
any cause whatsoever; that if any insurance is effected
during the continuance of this lease or any renewal
thereof by said second party, or any party interested
therein, on said grainhouse or the contents thereof,
said second party will, before such insurance is
effected, exhibit this lease to the agent or agents,
officer or officers of the insurance company or com-
panies through whom said grainhouse is to be insured,
and procure the indorsement hereon of said agent or
agents, officer or officers, and also upon the policies of
insurance issued by them or any renewal thereof, to the
effect that said insurance company will not, under any
circumstances, bring or cause to be brought any claim
or action at law against the party of the first part, its
successors or assigns, for damages occurring during
the term of this lease, or any renewal thereof, by fire
or otherwise, to the said grainhouse or appurtenances
erected on said land, or to the contents thereof.   And
it is hereby mutually agreed between the parties here-
to, that in case said grainhouse shall, at any time dur-
ing the continuance of this agreement, be destroyed by
fire or otherwise, the contract shall not cease and de-
termine by reason thereof, but the said second party
shall be allowed thirty days within which to rebuild
the same; and in case the said grainhouse shall not be,
by said second party, rebuilt in all respects equal to
one so destroyed, within thirty days from the time of

the destruction by fire or otherwise, then this contract shall, at the option of the party of the first part, cease and determine, and be no longer binding upon the parties thereto. And the party of the second part also further agrees with the party of the first part, that he will remove said grainhouse from off the grounds of said party of the first part at any time during the aforesaid term of five years after having received from the said party of the first part . . . days' notice to do so. And the party of the first part agrees to recognize said grainhouse as the property of the party of the second part, and permit him to remove the same, at any time, from the premises of the party of the first part. And it is also expressly understood between the parties hereto, that at expiration of the time mentioned for the continuance of the right herein granted to the second party, the said second party shall have reasonable time for removing said grainhouse from off the ground of the party of the first part, said removal to be at the expense of said second party; until such removal, the provisions of this lease regarding damages occasioned by fire, or otherwise, shall remain in full force and virtue. And said second party hereby agrees that he will not sublet said leased land nor assign nor transfer this agreement without the consent in writing of the general manager of the party of the first part, indorsed hereon, and subject to all the conditions, covenants, limitations and restrictions of this lease, and that he will use said leased land for no other purpose than that contemplated by the terms of this contract. And the said second party hereby further agrees to paint all buildings erected by him on the herein leased premises a color in conformity with the uniform color established by said party of the first part for its buildings generally. And it is distinctly understood and agreed between the parties hereto that in case the second party shall make default in any of the covenants on his part, to be kept and performed, or shall insure said grain-

house on said leased land without procuring the indorsement hereon, as hereinbefore provided in that respect, then in that case it shall and may be lawful for the said first party, its assigns, successors, agent or attorney, at its election, to declare this agreement at an end, and into or upon said premises, with the said grainhouse and appurtenances thereon or any part thereof, to enter with or without process of law, and the said second party or any persons occupying said premises and said grainhouse or appurtenances, to expel, remove and put out, using force as may be necessary for that purpose, and occupy and possess said premises, and hold and occupy the grainhouse and appurtenances thereon till they can be removed or the conditions of this lease shall have been complied with by said second party; but no action or proceedings under this paragraph by the party of the first part shall in any manner release the party of the second part from the obligations and duties assumed as regards damages occasioned by fire, or otherwise, as provided for in this agreement of lease.''

'' 'Further answering defendant says that for the various considerations named in said agreement the plaintiff herein agreed to assume, and by said contract did assume all risk of fire to his property, then or thereafter to be located upon defendant's land as aforesaid, from any cause whatever; and that under said agreement, for said consideration, the plaintiff further assumed all risk of fire from every cause, and undertook and agreed to hold and keep harmless the defendant from any and all damages whatsoever from fire or any cause to any building or buildings that might be erected upon said land, or their appurtenances and contents. Wherefore, defendant says that plaintiff ought not to have or maintain this case, and, having fully answered, prays to be discharged with its costs.'

''The issues were submitted to the court on the following agreed statement of facts, to-wit:

" 'It is hereby agreed by and between the parties hereto as follows:

" 'First. That the property sued for is correctly described in the petition, and was of the value therein stated, and was destroyed by fire on the day, at the place, and in the manner alleged in the petition.

" 'Second. That the lease between the parties thereto, E. F. Ordelheide and the defendant Wabash Railroad Company, dated on the first day of November, 1892, running five years from the date thereof, was executed by said parties as therein set forth, and that a correct and true copy of said lease is set out in the defendant's answer herein, and proof thereof is hereby dispensed with in this case.

" 'This agreement shall constitute a part of the record in the above entitled cause, and may be introduced in evidence in support of a demurrer, motion to strike out, reply, or other pleadings to be hereafter filed by the plaintiff in said cause or upon trial thereof.'

"The petition alleges and the agreed statement of facts admit that the building of plaintiff was constructed on defendant's right of way under a contract in which plaintiff expressly stipulated that the plaintiff 'would assume all risk of fire from any cause whatsoever;' that the warehouse was destroyed by fire negligently put out by defendant's servants. The stipulation is comprehensive enough to include within its terms fire caused by defendant's own negligence, but plaintiff insists that, however broad the language, it can not cover defendant's negligence, because a common carrier can not contract against its own negligence, such a contract being against public policy and therefore void.

"In Insurance Co. v. Railroad, 74 Mo. App. 89, Judge SMITH, in a most satisfactory opinion, ruled that a contract of lease substantially like this was not violative of public policy. He says 'None of the property so destroyed was in process of transportation by de-

fendant; none of it was awaiting ·delivery by .the defendant to its consignees after transportation, and none of it had been received by the company for transportation. The elevator and warehouse and the property in it bore the same relation to the carrying business of the defendant that the store and contents of any merchant or commission man would bear to it. Neither the lease nor the relation of the property to the defendant arose out of the discharge of any duty imposed upon it by its position as a common carrier or by its character of a quasi-public corporation. The fact that defendant .is a common carrier has no place in this case.' ''

A similar contract was sustained in Rutherford v. Railroad, 147 Mo. 441.

The Court of Appeals in this case through Judge BLAND, after a review of the authorities on this subject, held this contract did not contravene public policy, and this court, in Banc, in Wabash Railroad Co. v. Ordelheide, 172 Mo. 436, held this identical contract was not against public policy, not being a contract with a passenger, employee or shipper with regard to a contract of carriage, nor contravening any ·duty devolved· upon it by law to its employees.

Section 1111, Revised Statutes 1899, which renders every railroad company liable for damages, irrespective of negligence, to every person whose property may be injured or destroyed by fire communicated directly or indirectly by locomotive engines in use on said railroad, expressly authorizes the railroad companies to procure insurance against such damages.

In Wabash Railroad Co. v. Ordelheide, 172 Mo. 436, this court, in Banc, held that this contract was one of indemnity against loss occurring by fire set out by the engines of defendant, and it was not against public policy to allow it to make such a contract with plaintiff. We are satisfied with the reasoning and conclusions reached by the Court in Banc in construing

this contract and they must control this case also. The views therein expressed are in accord with the decision of the Supreme Court of Iowa in Griswold v. Railroad, 57 N. W. 843; Hartford Ins. Co. v. Railroad, 70 Fed. 201; and Stephens v. Railroad, 109 Cal. 86.

We deem it unnecessary, in view of these decisions, to repeat the reasons given at length.

"The company had the option to lease or to refuse to lease, and if it did lease to plaintiff and stipulated for indemnity from damages caused by its negligence in firing the property of plaintiff placed upon its right of way by its permission, that contract in no way relieved it from the discharge of any duty to the public, or to any passenger or shipper or any employee that the law or public policy imposed upon it."

It results that the judgment of the circuit court must be and is reversed.

All concur.