TRI–STATE GAS CO., Inc., Appellant,

v.

KANSAS CITY SOUTHERN RAILWAY
COMPANY, Respondent.

No. 56188.

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

Neale, Newman, Bradshaw & Freeman, O. J. Taylor, Richard Owensby, Springfield, for appellant.

Thomas J. Wheatley, Robert D. Youle, Maurice J. O'Sullivan, Jr., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, for respondent.

GERALD M. SMITH, Special Judge.

Appellant, Tri-State Gas Company, appeals from the action of the Circuit Court in entering a summary judgment against it in its negligence action against respondent Kansas City Southern Railway Company.

A Kansas City Southern train was approaching Noel, Missouri, on August 3, 1969, with a load of explosives, when the cars became ignited. The train proceeded on along the main track until it reached a point adjacent to Tri-State's premises. The train stopped at that point and a violent explosion occurred, causing extensive damage to Tri-State's property, a plant for the storage and handling of butane and propane gas. Prayer was for $150,000.

The land occupied by Tri-State is owned by the railroad and leased to Tri-State under a "Lease Agreement for Industrial Site" at an annual rental of $120. The premises leased adjoin a side track which services Tri-State and other businesses. The premises are in close proximity to the railroad's main track on land owned by the railroad. The lease contains the following provisions:

"(25) The lessee agrees to indemnify the Railway Company and save it harmless from any and all claims and expenses that may arise or that may be made for death, injury, loss or damage resulting to the Railway Company's employees or property, or to the Lessee or Lessee's employees or property, or to other persons or their property, arising from or happening in connection with or during the occupancy or use of said premises by the Lessee, whether or not caused by the negligence of the Railway Company, and resulting from fire or any other cause, excepting only loss or damage to the premises of the Railway Company, or to rolling stock, or to Lessee's shipments in the course of transportation, when such loss or damage is caused solely by fire set by locomotives operated by the Railway Company."

It is the meaning of this provision upon which the parties have joined issue and upon which the trial court based its summary judgment. Appellant contends that the provision is ambiguous in that if it is literally interpreted Tri-State would, during the period of the lease, be bound to indemnify the railroad for claims based upon the railroad's negligence anywhere on the railroad's line—no matter how far distant from Tri-State's premises or by whom made. Such an absurd result can be avoided, appellant contends, by interpreting the phrase "arising from or happening in connection with *or* during the occupancy or use of said premises . . ." as if the italicized word was "and." Such interpretation would then require a causal connection between the use or occupancy of the Tri-State premises and the damage or claim covered by the provision.

Leasehold provisions by which railroads are exempted from the consequences of their own negligence are valid and binding on the parties. Ordelheide v. Wabash R. Co., 175 Mo. 337, 75 S.W. 149; Wabash

R. Co. v. Ordelheide, 172 Mo. 436, 72 S.W. 684.

The difficulty with the provision before us is, of course, its all inclusiveness. The parties have attempted in one sentence to cover two related, but nevertheless, distinct legal concepts—indemnity and release. The absurd result envisioned by appellant is the product of this attempt. That result occurs because in failing to separate the two differing legal concepts, factual situations where only release could have been intended are included under indemnity. In such situation we must determine the meaning and scope of the provision. And this meaning and scope must be based upon the intent of the parties when the lease was made. In searching for this intent we consider the entire instrument, subsidiary agreements between the parties, and external circumstances which cast light on the intent. Ruysser v. Smith, Mo., 293 S.W.2d 930. With the provision here before us, we do not believe the intent can be determined by simply changing one of the disjunctives to a conjunctive, nor do we believe such a change is warranted. Pettit Grain & Potato Co. v. Northern Pac. Ry. Co., 227 Minn. 225, 35 N.W.2d 127, l. c. 130.

In addition to the "Lease Agreement for Industrial Site" in which the above quoted provision appears, the parties had also entered into an "Industry Track Agreement" which dealt with the side track actually servicing Tri-State's facility. That agreement contains extensive provisions dealing with the obligation of Tri-State to protect the railroad from damages arising from the construction, maintenance, and operation of the side track. Some of these provisions are set out in the margin.[1] Of particular interest are the provisions of paragraph 9 entitled "Liability." Those provisions furnish protection to the Railroad in two situations: (1) injury to Tri-State from fire caused by Railroad's locomotives on the side track and (2) damage or injury to the parties or third parties caused by the acts or omissions of Tri-State. Although not as broad or as inclusive in its protection as paragraph 25, that provision

1. "Right-of-way.—1. . . . Industry assumes and agrees to pay all damages to adjacent or abutting property by reason of the construction, maintenance and operation of said sidetrack, and will, if required by Railway Company, secure a release in proper form from abutting property owners. . . .

"2. Industry shall, as fully as practicable, comply with the latest known methods and practices for protection of property against sparks that may be caused by electricity and fire. . . .

"Maintenance.—3. Said sidetrack shall be maintained (including removal of ice and snow) and renewed to the satisfaction of Railway Company's Chief Engineer; the work to be performed by Railway Company and cost thereof borne as follows: at Industry's sole expense, including but not limited to all expenses incurred by reason of injury to or death of persons or damage to property, regardless of how same is caused, arising or growing out of or happening in connection with the performance of said maintenance work. . . .

"Liability.—9. In consideration of the covenants of Railway Company, herein contained, Industry agrees as follows:

(a) It is understood that the movement of railroad locomotives involves some risk of fire, and Industry assumes all responsibility for and agrees to indemnify Railway Company against loss or damage to property of Industry or to property upon its premises, arising from fire caused by locomotives operated by Railway Company on said sidetrack, or in its vicinity for the purpose of serving said Industry, except to the premises of Railway Company and to rolling stock belonging to Railway Company or to others, and to shipments in the course of transportation.

(b) To indemnify and hold harmless Railway Company for loss, damage or injury from any act or omission of Industry, its employees, or agents, to the person or property of parties hereto and their employees and to the person or property of any other person or corporation, while on or about said sidetrack; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally. . . ."

does evidence the scope of the protection granted by the agreements of the parties: (1) release for damage done to Tri-State by the railroad and (2) indemnity for liability of the railroad as a result of the acts or omissions of Tri-State. That document also recognizes in its preamble that the operation of cars and engines "involves the risk of damage to or destruction of property and injury to or death of persons . . . "

Provision 29 of the "Lease Agreement for Industrial Site" provides: "The provisions of this lease are for the benefit of The Kansas City Southern Railway Company, or any other railway company operating trains over the tracks in the vicinity of the leased premises against whom any claim may be asserted, suit brought or by whom any expenses may be incurred, and any one or more of said companies, when interested, may enforce by suit or otherwise, the provisions of this lease."

We also note that the rental provided in the lease is nominal and that the nature of Tri-State's operation can be regarded as hazardous, or at least as having a greater degree of risk from fire or explosion than other operations. It is clear this added danger was in the minds of the parties for they added two typewritten paragraphs to the printed lease involving safety regulations in the handling of butane and propane gas. It is additionally apparent from the cases that railroads frequently seek to protect themselves from the damage they may cause their lessees by fires originating from their locomotives or damage otherwise resulting from the operation of the railroad.

As stated in Sunlight Carbon Co. v. St. Louis & S. F. R. Co., 8 Cir., 15 F.2d 802: "If a warehouse or an elevator is built upon a railroad right of way in close proximity to the main line, danger from fire communicated by sparks from locomotives or danger of damage resulting otherwise in the operation of the railroad are probable." (l. c. 807).

■ Looking at all of these matters we conclude that paragraph 25 was intended to provide protection to the railroad in two basic areas: (1) to furnish indemnification from Tri-State for injuries or losses sustained by the railroad, employees of the parties, and third parties where the injury or loss arose in connection with the use of the premises by the Lessee and (2) to release the Railroad from any liability for damage to the Lessee's property during the period of occupancy whether the result of the railroad's negligence or not. Such an interpretation avoids the absurd result envisioned by the appellant, yet gives vitality to the obvious intent to provide broad protection to the railroad from potential claims which would not have come into existence had the railroad not leased the premises to Tri-State.

■ The leasing of the property to Tri-State was of benefit to both parties. Tri-State received a business location with rail service; the railroad gained a customer. Accordingly, the rental for this almost half acre tract is nominal, $120 per year. Such a nominal rent supports a conclusion that the parties did not intend the railroad to assume liabilities for damages to Tri-State's facilities or as a result of Tri-State's activities. Additionally, the nature of Tri-State's operation was such that greater potential for damage arose from the conduct of the railroad's business. The safety precautions required in the lease amply demonstrate the parties' awareness of this increased peril. Both the side track lease and the main track lease carry extensive provisions to preclude liability of the railroad for injuries or damage to which it would not have been subject had the lease not been made. The exceptions recited in paragraph 25 demonstrate the broad scope of the protection given the railroad. They except *only* damages which the railroad itself sustains as a result of fires which its locomotives set damaging its premises or rolling stock, and damages to Lessee's shipments in the course of transportation,

which latter liability the railroad, as a common carrier, cannot contract away. Ordelheide v. Wabash R. Co., *supra*. As to the former exception it is at least questionable that such indemnity should be placed upon a lessee as a matter of public policy for it relates to property used by the railroad as a common carrier. This supports the conclusion that the intention was that any liability which could be contracted away was covered by paragraph 25. Paragraph 29 also reflects the parties' intent that the railroad and any other railroad operating cars or locomotives on Kansas City Southern tracks near the leased premises would receive protection from their operations which might damage Tri-State and be protected from operations of Tri-State which might damage that railroad.

We are unable to find anything which would evidence an intent by the parties to narrow the scope of protection to the railroad to something less than that heretofore set out.

■ We believe the reasonable interpretation of this provision provides the railroad with protection against liability for the damage sustained by Tri-State.

Appellant relies principally upon three cases to support its position, i. e.: Union Pacific Railway Company v. El Paso Natural Gas, 17 Utah 2d 255, 408 P.2d 910; Carolina, C. & O. Ry. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S.W. 591, and Sunlight Carbon Company v. St. Louis and S. F. R. Company (8 Cir.), 15 F.2d 802.

Both *Carolina* and *Sunlight Carbon* involved damage from fire occurring to plaintiff's property located on a spur track. In each case the railroad premised its freedom from liability on an indemnity and release clause contained in the spur track agreement. In both cases the charged negligent act occurred or may have occurred during the railroad's operations on the main track. No lease was involved in either case. Both courts in denying the railroad's defense held that the indemnity and release provisions pertained only to the railroads' operation on the spur track, not on the main line. The reason both courts felt such an interpretation was warranted was that the only increased hazard to the railroad from building the spur track was in its operations on the spur track. Here, however, the increase in hazard from the leasing of these premises was from operations of the railroad on both main line and side track.

In *Union Pacific* the injury occurred when one of lessee's employees was injured by the railroad at a crossing a mile and one-half from the pipeline covered by the lease. The employee was on his way to the pipeline. The railroad settled the claim and then attempted recovery against the pipeline company under a lease which granted indemnity to the railroad from any liability which "is due to or arises because of the existence of the pipe line." The court held that something more of a causal connection between the injury and the pipeline was required than simply that "but for" the existence of the pipeline no injury would have been sustained. We think the philosophy and holding of *Union Pacific* is fully encompassed in our interpretation of the protection afforded the railroad under the indemnity features of the provision set out as protection (1) above requiring a causal connection before the indemnity provisions are applicable.

The increased hazards to the railroad here, against which paragraph 25 was directed, were injury or damage to the railroad, or, for which it might be liable to others, arising from the use of the premises by Tri-State and damages to Tri-State for which the railroad might be liable arising because of Tri-State's occupancy of the premises.

Judgment affirmed.

HOLMAN, P. J., and SEILER, J., concur.

BARDGETT, J., not sitting.